(138 P.3d 1262)
No. 94,187

STATE OF KANSAS, *Appellee*, v. RAY STEVENS, *Appellant*.

Opinion filed July 28, 2006.

*Heather Cessna,* of Kansas Appellate Defender Office, for appellant.

*Razmi M. Tahirkheli,* assistant county attorney, *John Gutierrez,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before PIERRON, P.J., GREEN and JOHNSON, JJ.

GREEN, J.: Ray Stevens appeals his conviction of driving or attempting to drive under the influence of alcohol in violation of K.S.A. 2005 Supp. 8-1567(a)(3). Stevens raises seven issues on appeal: (1) that the trial court erred in not granting his motion for a new trial; (2) that the trial court erred in allowing breath test results into evidence without granting him a continuance; (3) that there was insufficient evidence to prove that he committed the crime in Crawford County; (4) that the trial court erred in failing to require the State to elect either operating or attempting to operate under the influence of alcohol as its theory of prosecution, and he was denied his right to a unanimous jury verdict; (5) that the trial court erred in allowing Stevens' statements to be admitted into evidence; (6) that there was cumulative error; and (7) that the trial court erred in assessing the reimbursement of attorney fees. We affirm in part, reverse in part, and remand with directions.

Stevens' conviction in this case stemmed from events that occurred on the afternoon of April 18, 2004. Officer Dave Justice, who was on patrol duty in Pittsburg, Kansas, was called to a residence at 118 West Madison concerning a criminal trespass complaint. Within minutes of receiving the dispatch, Justice arrived at the residence and saw a Jeep parked in the street. Two people were in the front seat. Justice saw Stevens get out of the driver's side of the Jeep, stumble, and walk unsteadily towards the residence.

Justice yelled to Stevens several times, but Stevens did not respond. Stevens continued towards the residence and knocked on

the door. Justice then walked behind Stevens and yelled to him. Stevens turned around and walked towards Justice. Justice asked Stevens to move closer to the street to speak with him. Justice told Stevens about a criminal trespass complaint that a resident had filed against him the previous day.

While speaking with Stevens, Justice smelled a strong odor of alcohol emanating from Stevens. When Justice asked Stevens if he had been drinking, Stevens admitted that he had been drinking. Justice asked Stevens why he had gotten out of the driver's side of the Jeep, but Stevens would not respond. After other officers arrived at the location, Justice spoke with the passenger in the Jeep. Justice saw two alcohol beverage cans in the cup holders in the Jeep. Justice also saw a brown paper bag containing what appeared to be a liquor bottle with a broken seal inside the Jeep. When Justice asked what was in the paper bag, the passenger handed it to him. The paper bag contained a half-empty 375 milliliter bottle of whiskey.

After discovering these items, Justice told Stevens that he suspected that Stevens was under the influence of alcohol. During their conversation, Stevens admitted to driving the Jeep to the residence. Stevens agreed to undergo field sobriety testing. Justice attempted to perform three different field sobriety tests; however, Stevens either did not cooperate or refused to complete the tests. After refusing to complete the third field sobriety test, Stevens stated that he was driving, that Justice was going to do what he wanted, and that to "go ahead and get through with it."

Justice placed Stevens under arrest and took him to the police station where his breath was tested. Although Stevens agreed to take the breath test, he initially refused to blow into the breath testing machine. When Stevens finally blew into the breath testing machine, he failed to blow enough air for a full sample. The breath testing machine registered a deficient sample with a .205 alcohol concentration.

Stevens was charged with operating or attempting to operate a vehicle under the influence of alcohol in violation of K.S.A. 2005 Supp. 8-1567(a)(3) and transporting an open container of alcoholic beverage in violation of K.S.A. 8-1599. The jury convicted Stevens

of the operating or attempting to operate a vehicle under the influence of alcohol charge and acquitted him of the open container charge. Stevens moved for a judgment of acquittal or, alternatively, a new trial. Stevens alleged several errors that occurred during the course of his case. In a detailed written order, the trial court denied Stevens' motion for judgment of acquittal or new trial.

*Motion for New Trial*

First, Stevens argues that the trial court erred in denying his motion for a new trial based on the admission of the deficient breath test results into evidence. Whether to grant or deny a motion for a new trial is a matter which lies within the sound discretion of the trial court, and an appellate court reviews that decision under an abuse of discretion standard. *State v. Flynn*, 274 Kan. 473, 513, 55 P.3d 324 (2002).

Moreover, Stevens' argument requires this court to interpret various statutory provisions. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. We are not bound by the trial court's interpretation of a statute. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

Before trial, Stevens moved to suppress his deficient sample breath test results, arguing in part that such results were not reliable evidence. The trial court denied Stevens' motion to suppress, stating that there was insufficient evidence at the time to establish whether the breath test results should be excluded. The State introduced the deficient sample breath test results into evidence at trial during Officer Roughton's testimony. Stevens objected on the ground that the State had not presented any evidence that the test had been conducted properly. Finding that the State had laid a proper foundation, the trial court overruled Stevens' objection and admitted the test results into evidence.

In moving for a new trial, Stevens cited *State v. Hermann*, 33 Kan. App. 2d 46, 99 P.3d 632 (2004), where this court held that a deficient sample breath test could not be admitted as "other competent evidence" during a prosecution under K.S.A. 8-1567(a)(1). In denying Stevens a new trial, the trial court distinguished *Hermann*, stating that Stevens was prosecuted under subsection (a)(3),

not subsection (a)(1), of K.S.A. 2005 Supp. 8-1567. The trial court determined that partial sample breath test results are admissible evidence as long as a defendant was not prosecuted under subsection (a)(1) of K.S.A. 2005 Supp. 8-1567.

K.S.A. 2005 Supp. 8-1567(a)(3), the subsection under which Stevens was convicted, states in relevant part: "No person shall operate or attempt to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." K.S.A. 8-1005 discusses the evidence that can be used in a criminal proceeding against a defendant who has been charged with driving under the influence of alcohol. K.S.A. 8-1006(a) states that "[t]he provisions of K.S.A. 8-1005, and amendments thereto, shall not be construed as limiting the introduction of any *other competent evidence* bearing upon the question of whether or not the defendant was under the influence of alcohol or drugs, or both." (Emphasis added.)

Under K.S.A. 2005 Supp. 8-1013(f), " '[o]ther competent evidence' includes: (1) Alcohol concentration tests obtained from samples taken two hours or more after the operation or attempted operation of a vehicle; and (2) *readings obtained from a partial alcohol concentration test on a breath testing machine.*" (Emphasis added.) K.S.A. 2005 Supp. 8-1013(f)(2) states that "other competent evidence" *includes* a partial alcohol concentration test. A deficient sample test is only a partial test of the Intoxilyzer 5000 and, therefore, is akin to a partial alcohol concentration test. As a result, a deficient sample falls within the definition of other competent evidence under K.S.A. 2005 Supp. 8-1013(f)(2). Similarly, in *State v. Maze*, 16 Kan. App. 2d 527, 533-34, 825 P.2d 1169 (1992), which was a criminal proceeding for driving under the influence of alcohol, this court determined that a deficient sample reading was admissible as other competent evidence under K.S.A. 8-1013(f)(2) and K.S.A. 8-1006(a).

Because a deficient sample breath test is included within the meaning of other competent evidence under K.S.A. 2005 Supp. 8-1013(f)(2), and because other competent evidence is admissible under K.S.A. 8-1005 and 8-1006 in criminal proceedings for driving under the influence of alcohol, it is apparent that Stevens' deficient

sample breath test result was admissible in his prosecution under K.S.A. 2005 Supp. 8-1567(a)(3).

Nevertheless, continuing with his argument contained in his motion for a new trial, Stevens cites to *Hermann* to support his contention that the deficient sample breath test results were inadmissible evidence. In *Hermann*, the defendant was convicted under K.S.A. 8-1567(a)(1), which states that an individual shall not operate or attempt to operate any vehicle in Kansas while "[t]he alcohol concentration in the person's blood or breath *as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013*, and amendments thereto, is .08 or more." (Emphasis added.) This court applied the legal maxim *expressio unius est exclusio alterius* (the inclusion of one thing implies the exclusion of another) to conclude that "the intent of the legislature was to limit other competent evidence to *only* paragraph (1) of subsection (f) of K.S.A. 8-1013 and exclude all others." 33 Kan. App. 2d at 50.

Unlike K.S.A. 2005 Supp. 8-1567(a)(1), K.S.A. 2005 Supp. 8-1567(a)(3) does not point to a particular subsection of K.S.A. 2005 Supp. 8-1013 concerning "other competent evidence." Therefore, the reasoning in *Hermann* does not apply to this case.

Nevertheless, Stevens maintains that allowing a deficient sample breath test into evidence would render K.S.A. 2005 Supp. 8-1567(a)(1) meaningless. Stevens argues that the State could simply charge driving under the influence of alcohol under K.S.A. 2005 Supp. 8-1567(a)(3) and use the deficient sample breath test to prove a defendant's alcohol level was over the legal limit when it could not do so under K.S.A. 2005 Supp. 8-1567(a)(1). Under K.S.A. 2005 Supp. 8-1567(a)(1), the State needs only to prove that the alcohol concentration in a person's blood or breath is .08 or more to show that a person is in violation of this subsection. The language under this particular subsection indicates that the legislature intended for the alcohol concentration to be proved by a test conducted on a complete sample of an individual's blood or breath. Under K.S.A. 2005 Supp. 8-1567(a)(3), however, the State can use a variety of evidence to show that an individual was driving under the influence of alcohol to a degree that rendered him or her in-

capable of safely driving a vehicle. A deficient sample breath test, while not conclusive evidence that an individual was committing the crime of driving under the influence of alcohol, can be used in conjunction with a variety of circumstances to establish a DUI violation under K.S.A. 2005 Supp. 8-1567(a)(3).

Stevens' argument on this issue really lies with the legislature. This court follows the plain meaning rule. This rule states that when the language of a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed. There is no room for judicial construction. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). Citing K.S.A. 8-1013(f)(2) and K.S.A. 8-1006(a), the *Maze* court held that readings obtained from a partial alcohol concentration test on a breath testing machine are statutorily admissible. 16 Kan. App. 2d 527, Syl. ¶ 2. Because Stevens' argument runs counter to the plain meaning rule, it fails.

*Admission of Breath Test Results*

Next, Stevens argues that the trial court erred in admitting the deficient sample breath test results into evidence without granting him a continuance.

On the morning of trial, the State provided defense counsel a copy of Stevens' deficient sample breath test results. Defense counsel conceded that he had been aware of the deficient sample breath test and that Stevens was not prejudiced by the late receipt of that document. Nevertheless, defense counsel argued that he had not been provided with any records pertaining to the maintenance of the Intoxilyzer 5000. The record shows that before trial, the trial court ordered the State to disclose copies of scientific and lab reports, as well as all evidence or information possessed by the police or prosecutor that would aid in the preparation of the defense.

The trial court admonished the State for failing to provide the Intoxilyzer 5000 maintenance records to defense counsel. The trial court asked defense counsel how he was prejudiced by the State's failure to provide the records. Defense counsel maintained that he could have reviewed the documents to determine if there was an-

ything that seemed to be irregular. If he discovered anything that seemed to be irregular, he could have spoken with a different law enforcement agency and possibly called a rebuttal witness. Defense counsel requested that the trial court exclude any evidence of the breath test.

The trial court ordered the State to turn over the records pertaining to the Intoxilyzer 5000 to defense counsel. The trial court stated that defense counsel could look at the records and determine if there was anything in those records that would prejudice his client. After voir dire, opening statements from the State and defense counsel, and a noon recess, the trial court noted that defense counsel had an opportunity to review the records and asked how the late submission of the records had prejudiced the defense. Defense counsel pointed out that the officer performing the breath test on Stevens had failed to record it in a log book. Defense counsel argued that he was prejudiced because he was unable to call an expert to say that all tests, including a deficient sample test, should be put in the log book. The trial court found that whether the test had been recorded in a log book was irrelevant. The trial court found that the State's delay in providing the records did not prejudice the defense.

The trial court then allowed the State and defense counsel to examine Officer Roughton, the records custodian, outside of the jury's presence concerning the reliability of the deficient sample. The trial court determined that it would allow the State to establish a foundation for the admission of the deficient sample breath test. Moreover, the trial court indicated that defense counsel had ample time to find an expert witness to testify that a deficient sample breath test is inaccurate.

In moving for a new trial, Stevens renewed his argument that he was prejudiced by the State's delay in providing documents. The trial court rejected Stevens' argument and found that he had not been prejudiced.

In *State v. Carmichael*, 240 Kan. 149, 152, 727 P.2d 918 (1986), our Supreme Court discussed the State's duty to disclose exculpatory evidence:

"A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is material to the guilt or innocence of the defendant. Suppression of such evidence is a violation of the defendant's Fourteenth Amendment due process rights. *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant. To justify a reversal of a conviction for failure to disclose evidence, the evidence withheld by the prosecution must be clearly exculpatory and the withholding of the evidence must be clearly prejudicial to the defendant."

Here, Stevens knew about the deficient sample breath test on the Intoxilyzer 5000 before trial and was given the records pertaining to the Intoxilyzer 5000 and the deficient sample on the day of trial. "Evidence not disclosed to the defendant before trial is not suppressed or withheld by the State if the defendant has personal knowledge thereof, or if the facts become available to him during trial and he is not prejudiced in defending against these new facts. [Citations omitted.]" *State v. Barncord*, 240 Kan. 35, 43, 726 P.2d 1322 (1986). Defense counsel conceded that the deficient sample breath test had been an issue in the case before the State's disclosure of the documents. Stevens admitted that he was not prejudiced by the State's late disclosure of the printout containing his deficient sample breath test results.

Concerning the Intoxilyzer 5000 maintenance records, defense counsel contended that he was prejudiced because he was unable to call an expert to testify that all breath tests should be recorded in the log book. Nevertheless, during cross-examination, Sergeant David Roughton, who was the custodian of the Intoxilyzer 5000 maintenance records at the Pittsburg Police Department, testified that the officer performing Stevens' breath test was supposed to record it in the log book but failed to do so. An expert witness was unnecessary when the records custodian himself admitted that the officer administering the breath test failed to follow procedure. Defense counsel failed to establish that there was anything in the paperwork for the Intoxilyzer 5000 which might require further investigation to aid Stevens' defense.

We find no error in the trial court's decision to admit Stevens' breath test results into evidence.

*Venue*

Next, Stevens contends that there was insufficient evidence to support his conviction for driving or attempting to drive under the influence of alcohol because the State failed to prove that the crime was committed in Crawford County.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

The jury was instructed that in order to find Stevens guilty of driving or attempting to drive under the influence of alcohol, the following elements must be proven: (1) that Stevens drove or attempted to drive a car; (2) that while driving or attempting to drive, Stevens was under the influence of alcohol to a degree that rendered him incapable of safely driving a car; and (3) that this act occurred on or about April 18, 2004, *in Crawford County, Kansas*. See PIK Crim. 3d § 70.01.

Generally,

"venue is a question of fact for the jury to determine in the trial of the case in chief. Venue may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission of the crime or crimes may be fairly and reasonably inferred. [Citations omitted.]" *State v. Pencek*, 224 Kan. 725, 729, 585 P.2d 1052 (1978).

Citing *State v. Jones*, 204 Kan. 719, 466 P.2d 283 (1970), for the proposition that other competent evidence may be sufficient to establish venue of an offense, our Supreme Court in *State v. Griffin*, 210 Kan. 729, 731, 504 P.2d 150 (1972), stated:

"It is true that under the provisions of K.S.A. 1970 Supp. 22-2602 [now 1971 Supp.], prosecution must be had in the county where the crime was committed. This court has recognized on many occasions that the venue of an offense is jurisdictional, and it must be proved to establish the jurisdiction of the court. However, it is not necessary to prove the jurisdictional facts of venue by specific question and answer that the offense occurred in the particular county. It may be established by other competent evidence showing the offense was committed within the jurisdiction of the court."

In *Jones*, the defendant argued that the Ford County District Court lacked jurisdiction over the alleged crime of statutory rape because the evidence failed to establish venue of the offense in Ford County. Based upon the victim's testimony, the offense occurred after the defendant took her to the movies and then took her out to the country in his car. In rejecting the defendant's argument, our Supreme Court stated that venue was a question of fact for the jury. Our Supreme Court noted that the jury had been given an instruction which required it to find beyond a reasonable doubt that the act occurred within Ford County. Our Supreme Court stated that the jury, by its guilty verdict, had found from the evidence that the offense occurred in Ford County. In reviewing the evidence presented at trial, our Supreme Court looked at the fact that the defendant's family lived in Bucklin which was located in Ford County, that the children were taken to the movies in Bucklin before the alleged incident, and that there was no indication that the defendant drove an extended distance into the country when the alleged incident occurred. Our Supreme Court concluded: "Considering the entire record presented in this case, we cannot say the evidence upon which the jury based its finding was insufficient to sustain the finding that the offense was committed in Ford County." 204 Kan. at 724. Our Supreme Court determined that the Ford County District Court had jurisdiction over the crime. 204 Kan. at 723-24.

Our Supreme Court's decision in *Jones* is applicable to the instant case. Similar to *Jones*, there was sufficient evidence from which the jury could find that the offense occurred in Crawford County, the county where the case was tried. Officer Justice testified that he worked for the Pittsburg Police Department in Crawford County. While on patrol duty in Pittsburg on April 18, 2004, he received the dispatch to go to the residence at 118 West Madison concerning criminal trespass. Justice arrived at that location within minutes. Justice had worked on a case the day before concerning a criminal trespass by Stevens at that same location. Once Justice arrived at the location, he suspected that Stevens was intoxicated and, after gathering more evidence, arrested him. Stevens underwent breath testing at the Pittsburg Police Department.

Based on this evidence, the jury could fairly and reasonably infer that Stevens committed the crime in Crawford County. Because Justice worked for the Pittsburg Police Department which is located in Crawford County, the jury could infer that the residence to which Stevens was called was also located in Crawford County. There was no evidence that Justice had been dispatched outside of his jurisdiction to respond to a call concerning criminal trespass. Moreover, the fact that Justice arrested Stevens and took him to the police station for breath testing indicates that Justice encountered Stevens in Crawford County. Generally, Justice would not have had the authority to make an arrest as a law enforcement officer outside of his jurisdiction. See *State v. Miller*, 257 Kan. 844, 849, 896 P.2d 1069 (1995) ("[G]enerally a police officer acting within his official capacity cannot make an arrest outside the jurisdiction from which his authority is derived.").

In reviewing the evidence presented at trial, we find sufficient evidence to establish that Stevens committed the crime of driving or attempting to drive under the influence of alcohol in Crawford County.

*Unanimous Jury Verdict*

Next, Stevens asserts that the trial court erred in failing to require the State to elect either operating or attempting to operate as its theory of prosecution. Stevens maintains that he was deprived of his right to a unanimous jury verdict. An appellate court has unlimited review over issues involving juror unanimity. See *State v. Kesselring*, 279 Kan. 671, 678, 112 P.3d 175 (2005).

On the morning of trial, Stevens asked that the trial court require the State to elect whether it would proceed under the theory of driving under the influence of alcohol or attempting to drive under the influence of alcohol. The trial court determined that the State could proceed under both driving or attempting to drive under the influence of alcohol. In the jury instructions and in the verdict form, the trial court did not separate out "operating or attempting to operate." Instead, the jury was instructed as follows:

"The defendant is charged with the crime of operating or attempting to operate a vehicle while under the influence of alcohol. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant drove or attempted to drive a vehicle;

"2. That the defendant, while driving or attempting to drive, was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle; and

"3. That this act occurred on or about the 18th day of April, 2004, in Crawford County, Kansas."

Stevens did not object to this instruction or to the jury verdict form.

Stevens contends that because the operation and attempted operation were not set out separately in the jury instructions and verdict form and the State was not required to elect one of these theories, there is no way to determine on which act the jury actually found him guilty. In making this argument, Stevens points out that the State presented evidence at trial to support both driving under the influence of alcohol and attempting to drive under the influence of alcohol.

Stevens' argument seems to suggest that this is a multiple acts case. "In multiple acts cases, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime." *State v. Timley*, 255 Kan. 286, Syl. ¶ 2, 875 P.2d 242 (1994). On the other hand, in an alternative means case, a single offense may be committed in more than one way. The jury must be unanimous as to guilt for the single crime charged. As long as substantial evidence supports each alternative means, jury unanimity is not required as to the means by which the crime was committed. *Timley*, 255 Kan. at 289.

K.S.A. 2005 Supp. 8-1567(a)(3), the statute under which Stevens was charged, states: "No person shall *operate* or *attempt to operate* any vehicle within this State while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." (Emphasis added.) K.S.A. 2005 Supp. 8-1567(a)(3) provides alternative ways to commit the crime: driving or attempting to drive under the influence of alcohol. In *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002), our Supreme Court noted: "[T]he current version of the DUI statute at issue here encompasses both those accused of actually driving while un-

der the influence and those who merely tried but failed, *with no election required.*" (Emphasis added.)

We view this case as an alternative means case rather than a multiple acts case. Therefore, our analysis is limited to whether there was sufficient evidence to support both theories of "driving" and "attempting to drive" under the influence of alcohol.

*Driving Under the Influence of Alcohol*

The State introduced evidence that Officer Justice had encountered Stevens in front of a residence after receiving a dispatch a few minutes earlier concerning a criminal trespass at that location. When Justice arrived at that location, he saw two people sitting in the front seat of a Jeep that was parked on the street in front of the residence. Justice saw Stevens stumble as he got out of the driver's side of the Jeep. Upon approaching Stevens, Justice smelled alcohol on Stevens. Stevens admitted that he had been drinking.

Justice discovered two alcohol beverage cans in cup holders and a half-empty 375 milliliter bottle of whiskey in the Jeep. Justice saw keys in the Jeep's ignition. Stevens admitted to driving to the residence. Stevens would not complete field sobriety tests. At the police station, Stevens was breath tested, which resulted in a deficient sample with an alcohol concentration of .205.

Although Justice did not see Stevens driving, Stevens was sitting on the driver's side of the Jeep with the keys in the ignition and a passenger in the front seat. Within minutes of receiving a call concerning a criminal trespass at the residence, Justice arrived at the location and saw Stevens get out of the driver's side of the Jeep. The evidence indicates that Stevens was intoxicated when Justice encountered him. We conclude that there was sufficient evidence for a reasonable jury to find that Stevens drove under the influence of alcohol in violation of K.S.A. 2005 Supp. 8-1567(a)(3).

*Attempting to Drive Under the Influence of Alcohol*

The evidence was also sufficient to support a theory that Stevens was attempting to drive under the influence of alcohol. "Movement of the vehicle is not required in order to convict a defendant of

DUI under the theory that defendant *attempted* to operate the vehicle." *Kendall*, 274 Kan. at 1009-10. Stevens was sitting on the driver's side of a Jeep in front of another individual's residence. The keys were in the ignition, and another individual was sitting in the passenger seat. Moreover, as discussed above, the evidence indicated that Stevens was impaired to the point that he was unable to drive the Jeep safely. Based on this evidence, a reasonable jury could have concluded that Stevens was attempting to drive under the influence of alcohol.

Because there was sufficient evidence to support either "driving" or "attempting to drive under the influence of alcohol" under K.S.A. 2005 Supp. 8-1567(a)(3), we determine that Stevens' argument on this issue lacks merit.

*Suppression of Defendant's Statements*

Next, Stevens argues that the trial court erred in allowing his statements into evidence at trial. " 'An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion.' " *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004).

Before trial, Stevens filed a trial brief, stating that he had a right not to testify and that his statements were inadmissible hearsay unless these statements fell within an exception under K.S.A. 60-460 or unless he decided to take the stand. Stevens, however, never formally moved to suppress these statements. Moreover, at trial, Stevens failed to object to the admission of his statements into evidence. A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for appeal. *State v. Kunellis*, 276 Kan. 461, 477, 78 P.3d 776 (2003).

Nevertheless, an appellate court may consider constitutional issues argued for the first time on appeal when necessary to serve the interests of justice or prevent a denial of fundamental rights. *State v. Morris*, 276 Kan. 11, Syl. ¶ 2, 72 P.3d 570 (2003). Here, Stevens alleges that this court should consider his argument because it implicates his fundamental right against self-incrimination.

Even if this court were to consider Stevens' argument, it lacks merit. Stevens was not submitted to a custodial interrogation when

he made the statements at issue. Under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1996), a prosecutor is prevented from using statements stemming from a custodial interrogation unless the prosecutor proves that certain procedural safeguards were used to obtain the waiver of the defendant's privilege against self-incrimination. *State v. Benoit*, 21 Kan. App. 2d 184, 189, 898 P.2d 653 (1995).

"The threshold issue in determining whether *Miranda* warnings are required is whether a person is in custody when inculpatory statements are made; this determination is made on a case-by-case basis according to the facts." *State v. Torres*, 280 Kan. 309, Syl. ¶ 3, 121 P.3d 429 (2005). "An objective standard is used to judge whether an interrogation is 'custodial.' The proper analysis is how a reasonable person in the suspect's position would have understood the situation. [Citation omitted.]" *State v. Jacques*, 270 Kan. 173, 186, 14 P.3d 409 (2000).

Here, Officer Justice approached Stevens concerning a criminal trespass complaint by the resident. While informing Stevens that he was there concerning the criminal trespass complaint and that the resident did not want Stevens on her property, Justice became suspicious that Stevens was under the influence of alcohol. Stevens admitted to drinking but initially did not admit that he had been driving. Justice then discovered the half-empty alcohol bottle and alcohol beverage cans in the Jeep. At some point after Justice resumed talking with Stevens, Stevens admitted that he had driven to the residence. Stevens refused to complete field sobriety tests. At that point, Justice took Stevens into custody.

Stevens maintains that his statement that he was driving the Jeep should not have been allowed into evidence because it was the product of a custodial interrogation. We disagree. Stevens' statement that he was driving the Jeep was voluntary. When Stevens made this statement, Justice was investigating whether Stevens had committed the crime of DUI. Stevens had not been arrested, nor was there evidence indicating that he was restrained of his freedom of action in any significant way. It was only after the statement was made that Justice arrested Stevens and took him to the police station.

Citing *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), Stevens further contends that his constitutional rights under the Sixth Amendment to the United States Constitution were violated when the statement that he had driven the Jeep was presented by the State at trial. Stevens argues that he was placed in an untenable position: either he could forego his constitutional right against self-incrimination under the Fifth Amendment and testify about what had occurred during the interrogation or he could exercise his right under the Fifth Amendment and allow his unchecked testimonial statements into evidence. Stevens maintains that this dilemma violates the doctrine of unconstitutional conditions.

"In *Crawford*, the Court held that testimonial statements of unavailable witnesses are inadmissible unless the defendant was afforded an opportunity to cross-examine those witnesses." *Torres*, 280 Kan. at 319. Nevertheless, "[w]hile the *Crawford* Court stated that statements taken during police interrogations are testimonial, the Court was clearly discussing interrogations of people other than the defendant." *Torres*, 280 Kan. at 319.

In *Torres*, the defendant made the same argument as that which Stevens now raises on appeal. Our Supreme Court rejected Torres' argument as follows:

"Torres' right against self-incrimination and his right to confront the witnesses against him are not conflicting. Torres was not compelled to disclose information to law enforcement, but he chose to do so. We are unaware of any authority holding that 'confronting oneself' at trial under these circumstances is a right guaranteed by the Sixth Amendment. Torres fails to show that his Sixth Amendment rights were violated." 280 Kan. at 320.

Our Supreme Court's decision in *Torres* controls this issue. This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). Therefore, Stevens' argument fails.

*Cumulative Error*

Next, Stevens maintains that the combination of errors in this case deprived him of his right to a fair trial. "Multiple trial errors

may require reversal of a defendant's conviction if the cumulative effect of the errors substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found if the evidence against the defendant was overwhelming." *State v. Schoonover*, 281 Kan. 453, Syl. ¶ 34, 133 P.3d 48 (2006). Because we have found no error in this case, Stevens' cumulative error argument lacks merit.

## Attorney Fees Assessment

Finally, Stevens contends that the trial court erred in assessing the amount of attorney fees to reimburse the State Board of Indigents' Defense Services (BIDS). Stevens' argument requires interpretation of K.S.A. 2005 Supp. 22-4513 and K.S.A. 2005 Supp. 21-4603d(i). Interpretation of a statute is a question of law over which an appellate court has unlimited review. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

At sentencing, Stevens was ordered, as a condition of his probation, to reimburse BIDS for attorney fees incurred on his behalf. Before assessing a monthly payment amount, the trial court questioned Stevens concerning his income at his current job. Stevens informed the trial court that his net income was approximately $400 every 2 weeks. The trial court ordered Stevens to pay at least $50 monthly, this amount going towards fines, court costs, and attorney fees. Neither at the sentencing hearing nor in the journal entry of sentencing did the trial court set forth the specific amount of attorney fees to be reimbursed to BIDS.

K.S.A. 2005 Supp. 21-4603d(i), which sets forth dispositions for crimes committed after July 1, 1993, requires the trial court to order a defendant to reimburse BIDS for attorney fees and other defense services:

"[T]he court shall order the defendant to reimburse the state general fund for all or a part of the expenditures by the state board of indigents' defense services to provide counsel and other defense services to the defendant. In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or any

unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment. The amount of attorney fees to be included in the court order for reimbursement shall be the amount claimed by appointed counsel on the payment voucher for indigents' defense services or the amount prescribed by the board of indigents' defense services reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less."

K.S.A. 2005 Supp. 22-4513 also requires the trial court to order a convicted defendant to reimburse BIDS for attorney fees and other defense services:

"(a) If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases.

"(b) In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment."

Recently, in *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006), our Supreme Court held: "A sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. 22-4513 must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose."

Stevens concedes that the trial court considered his income in assessing his monthly payment amount of $50, part of which was for reimbursement of attorney fees to BIDS. Nevertheless, Stevens maintains that the trial court's failure to assess the amount of attorney fees at sentencing and failure to include those fees when considering the amount he could pay violated K.S.A. 2005 Supp. 21-4603d(i) and K.S.A. 2005 Supp. 22-4513.

Nevertheless, the State maintains that because Stevens failed to raise this issue before the trial court, he cannot raise it now on appeal. Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). Nevertheless, in *Robinson,* our Supreme Court noted that in K.S.A. 2005 Supp. 22-4513(a), the legislature stated unequivocally "that the BIDS fees 'shall' be taxed against the defendant." 281 Kan. at 543. Comparing this language with that contained in K.S.A. 2005 Supp. 22-4513(b) which requires the sentencing judge, when assessing the amount and method of payment of BIDS fees reimbursement, to "take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose," our Supreme Court stated:

"The language [of K.S.A. 22-4513(b)] is mandatory; the legislature stated unequivocally that this 'shall' occur, in the same way that it stated unequivocally that the BIDS fees 'shall' be taxed against the defendant. Compare K.S.A. 2005 Supp. 22-4513(a), (b). The language is in no way conditional. There is no indication that the defendant must first request that the sentencing court consider his or her financial circumstances or that the defendant must first object to the proposed BIDS fees to draw the sentencing court's attention to those circumstances.

"In addition, and in further response to the State's first argument on this appeal, the fact that the statute also permits a defendant to petition for waiver does not change the mandatory language or mean the waiver procedure is intended as a substitute for the sentencing court's initial consideration of a defendant's finances." 281 Kan. at 543-44.

The reasoning in *Robinson* is applicable here. K.S.A. 2005 Supp. 22-4513(a) imposes a mandatory duty on the trial court to tax BIDS fees against the defendant. This language is not conditional. Moreover, there is no indication that the defendant must request that the trial court tax the BIDS fees before considering the defendant's financial resources and the burden that payment of the fees will impose. Therefore, this issue may be raised for the first time on appeal.

We read K.S.A. 2005 Supp. 22-4513(a) as requiring the trial court to first tax as costs the amount claimed by BIDS or the amount set forth in the BIDS reimbursement tables, whichever amount is less. In her concurring opinion in *Robinson,* Justice Luckert noted that the plain language of K.S.A. 2005 Supp. 22-

4513(a) requires the trial court "to assess either (a) the amount of actual expenditures for providing counsel and other defense services or (b) the amount allowed by the BIDS' defense reimbursement tables, whichever is less." 281 Kan. at 550. Once this figure has been taxed, K.S.A. 2005 Supp. 22-4513(b) requires the trial court, in setting the amount and payment method of the fees, to consider the defendant's financial resources and the nature of the burden that repayment of those costs will impose on the defendant. Consequently, K.S.A. 2005 Supp. 22-4513(b) requires the repayment of those costs be balanced against the defendant's financial ability to repay them. When the trial court has failed to tax a specific amount claimed by BIDS, the trial court is unable to adequately evaluate the amount of such sum the defendant is able to pay.

We reverse the trial court's order concerning the attorney fees to be reimbursed to BIDS. We remand for the trial court to tax a specific amount of attorney fees claimed by BIDS and to determine the amount and method of payment of such sum that the defendant is able to pay.

Affirmed in part, reversed in part, and remanded with directions.

JOHNSON, J., dissenting: I respectfully dissent from the majority's finding that the evidence was sufficient to support Stevens' DUI conviction upon the alternative means of attempting to operate a vehicle.

The majority declares that K.S.A. 2005 Supp. 8-1567 creates alternative means by which one may commit the crime of DUI. As authority, it relies on a statement in *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002), that the statute encompasses both those who operate under the influence and those who try to operate but fail. The majority emphasizes the concluding prepositional phrase, "with no election required." Interestingly, Stevens relies heavily upon the same case, especially *Kendall's* characterization of operating under the influence and attempting to operate under the influence as "theories of guilt." 274 Kan. at 1010.

In *Kendall*, law enforcement found Kendall passed out in a stationary vehicle with his foot on the brake pedal, the transmission

in neutral, and the engine running. In the ensuing trial, the jury was given separate DUI elements instructions, one alleging " '[t]hat the defendant drove a vehicle,' " and one alleging " '[t]hat the defendant attempted to drive a vehicle.' " 274 Kan. at 1007. Additionally, the jury was instructed that " '[t]he defendant is charged in the alternative with operating or attempting to operate a vehicle while under the influence of alcohol. You are instructed that the alternative charges constitute one crime.' " 274 Kan. at 1007. The verdict form presented the jury with three options: (1) guilty of DUI "by driving a motor vehicle"; (2) guilty of DUI "by attempting to drive a motor vehicle"; or (3) not guilty.

During deliberations, the *Kendall* jury asked for a legal definition of driving. The trial court's response included the incorrect statement: " 'Movement of the vehicle is not required.' " 274 Kan. at 1010. The *Kendall* opinion found the court's response to be erroneous. To operate a vehicle means to drive it. Kendall's conviction for operating a vehicle under the influence required evidence, either direct or circumstantial, that defendant drove the vehicle, *i.e.*, vehicle movement was required.

However, *Kendall* found that the defendant could be convicted of DUI under the theory that he attempted to operate the vehicle, even in the absence of any evidence that the vehicle moved. The court found the record contained ample evidence to support the attempt to operate theory. Further, because Kendall's defense was a general denial, our Supreme Court found that he was not prejudiced by the erroneous instruction and declared the error to be harmless. Apparently, under the *Kendall* thinking, a prosecutor who alleges that a defendant either drove a vehicle or attempted to drive a vehicle is proceeding under two "theories of guilt." However, a defendant who asserts that he or she neither drove a vehicle nor attempted to drive a vehicle is proceeding under only one theory of defense.

I must confess to some reservation in declaring that *Kendall* actually intended to treat the operating and attempting to operate theories as alternative means of committing DUI. As noted, the case had been presented to the jury as alternative charges with separate elements instructions and separate verdict options. The

*Kendall* court upheld the DUI conviction because "there was ample evidence that Kendall *attempted* to operate the vehicle." 274 Kan. at 1011. That is, the evidence supported one of the alternative *charges*. However, *State v. Timley*, 255 Kan. 286, Syl. ¶ 1, 875 P.2d 242 (1994), had declared some 8 years earlier that "[u]nanimity is not required . . . as to the means by which the crime was committed *so long as substantial evidence supports each alternative means.*" (Emphasis added.) *Kendall* never mentions "alternative means" and does not identify the substantial evidence that would support the alternative of operating under the influence, as opposed to attempting to operate. Therefore, *Kendall*'s isolated, unexplained prepositional phrase, "with no election required," is difficult to place within the context of the facts of that case.

Nevertheless, if we are presented with an alternative means scenario, I agree that *Timley* should control, and we must find substantial evidence to support both alternatives, *i.e.*, that Stevens drove while under the influence and that Stevens attempted to operate his vehicle while under the influence. *Cf.* Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275, 296 (2005) (noting cases subsequent to *Timley* that affirmed convictions even though the record was devoid of evidence to support one of the charged alternative means). I can accept the majority's holding that the evidence was sufficient for a rational jury to reasonably infer that Stevens, while under the influence of alcohol, drove his vehicle to the place where it was parked when Officer Justice arrived. However, the jury did not have sufficient evidence to find that Stevens attempted to operate his vehicle but failed to drive it.

One might perceive that an "attempt to operate" would always precede an actual operation; one cannot drive a vehicle without first trying to do so. In that event, evidence supporting operation would necessarily support the precedent attempt to operate. However, if that were true, attempting to operate would be a lesser included offense of operating a vehicle. See K.S.A. 2005 Supp. 21-3107(2)(b) (attempt to commit a crime is a lesser included offense). Therefore, if attempt to operate is to be considered a coequal, alternative means of committing DUI, a critical element of that

alternative is that the defendant failed in his or her attempt to operate or drive the vehicle. *Cf.* K.S.A. 21-3301 (defining attempt in terms of failing to complete the crime).

The majority is persuaded that the following facts are substantial evidence that Stevens tried but failed to drive his vehicle: (1) Stevens was occupying the driver's seat when Officer Justice arrived; (2) another person occupied the passenger seat; (3) the keys were in the vehicle ignition; and (4) the vehicle was parked in front of another person's residence. I do not perceive these facts as creating a reasonable inference of a failed attempt to operate the vehicle. See *State v. Johnson*, 33 Kan. App. 2d 490, 502, 106 P.3d 65 (2004) (an inference may not rest upon another inference). To the contrary, the established fact that Stevens' vehicle was parked in front of another's residence creates the inference that Stevens was *successful* in driving his vehicle to that location. Stevens' actions in exiting the vehicle, proceeding to the front door of the residence, and knocking on the door support the inference that he drove there, rather than that he failed to drive. Indeed, that is the inference the prosecutor wanted the jury to draw when he argued that the more "reasonable way to look at it is [Stevens] was in front of a house where he was not welcome, he just drove up, he was just jumping out wanting to make contact because he was not aware that he was not welcome there."

Unlike the situation in *Kendall*, Stevens' vehicle was not in the middle of the street, its engine was not running, its transmission was not in neutral, and its headlights and brake lights were not illuminated. Further, in closing argument, the prosecutor did not even suggest that Stevens made a failed attempt to drive the vehicle. When we review an alternative means case, we must consider whether a rational trier of fact could have found each alleged means of committing the crime to have been proved by the State beyond a reasonable doubt. See *State v. Morton*, 277 Kan. 575, 580, 86 P.3d 535 (2004). Here, the State failed to prove beyond a reasonable doubt that Stevens attempted to operate his vehicle, as opposed to actually operating the vehicle. Therefore, I would reverse and remand for retrial upon the sole means of committing DUI by operating a vehicle while under the influence. One might

consider this disposition unnecessary, given the evidence that Stevens operated the vehicle, including his confession. However, if *Timley* is to mean what it says, reversal is mandated.

Before concluding, I want to clarify my position on the admission of Stevens' statements. I would find that the suppression issue was not preserved for appeal. Stevens did not file a motion to suppress pursuant to K.S.A. 22-3215, and he did not object when the statements were offered at trial. However, I disagree with the majority's further determination that Stevens was not in custody when he made the statements.