No. 103,662

STATE OF KANSAS, *Appellee*, v. BUDDY A. AHRENS, *Appellant*.
(290 P.3d 629)

Opinion filed December 21, 2012.

*Michelle Davis*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Matthew W. Ricke*, county attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: We granted Buddy Ahrens' petition for review to consider whether the terms "operating" *or* "attempting to operate" a vehicle create alternative means of establishing the crime of driving under the influence (DUI) under K.S.A. 2008 Supp. 8-1567(a)(3). The Court of Appeals concluded that while the statute creates alternative means, Ahrens was not entitled to a reversal of his conviction because the State presented sufficient evidence that Ahrens both operated and attempted to operate his vehicle while under the influence of alcohol.

Applying the rubric we recently developed in *State v. Brown*, 295 Kan. 181, 284 P.3d 977 (2012), we conclude that operating and attempting to operate a vehicle while under the influence of alcohol are not alternative means of committing the crime of DUI under K.S.A. 2008 Supp. 8-1567(a), and we reverse the panel's decision with respect to that issue. Because operating and attempting to operate are not alternative means and the State presented more than sufficient evidence that Ahrens operated the vehicle under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle under K.S.A. 2008 Supp. 8-1567(a)(3), we affirm Ahrens' DUI conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

As Kingman County Sheriff's Deputy Michael Roths conducted a traffic stop on the evening of April 8, 2009, he saw a Suburban with a defective taillight pass by. After completing the traffic stop, Roths returned to his vehicle and pursued the Suburban. As he did so, he noticed the Suburban also had a defective brake light. Roths activated his emergency lights and pulled over the Suburban.

Upon making contact with the Suburban's driver, Ahrens, Roths detected the odor of alcohol and noted that Ahrens' eyes were glassy and bloodshot and his speech was slurred. Suspecting Ahrens was intoxicated, Roths asked Ahrens if he had been drinking. Ahrens initially denied consuming alcohol but later told Roths he had consumed alcohol earlier in the afternoon. After Ahrens failed two of the field sobriety tests administered by Roths, Roths arrested him for DUI.

The State charged Ahrens with violating K.S.A. 2008 Supp. 8-1567(a)(3), alleging Ahrens "unlawfully and intentionally operate[d] or attempt[ed] to operate a motor vehicle while under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle."

The jury was instructed, in relevant part, that Ahrens was "charged with the crime of operating or attempting to operate a vehicle while under the influence of alcohol," that the State was required to prove that Ahrens "drove or attempted to drive a vehicle," that Ahrens, "while driving or attempting to drive, was under the influence of alcohol," and that "this act occurred on or about the 8th day of April, 2009, in Kingman County Kansas."

The jury also was instructed that its verdict "must be founded entirely upon the evidence admitted and the law as given in [the jury] instructions" and that its "agreement upon a verdict must be unanimous." The jury verdict form reflects that the jury found Ahrens guilty "as to the crime of Driving Under the Influence of Alcohol."

The jury found Ahrens guilty of DUI under K.S.A. 2008 Supp. 8-1567(a)(3), and Ahrens directly appealed to the Court of Appeals. Relying on *State v. Stevens*, 285 Kan. 307, 172 P.3d 570 (2007), and the definition of "attempt" in K.S.A. 21-3301(a), the Court of Appeals panel concluded (1) that the phrase "operate or attempt to operate" in 8-1567(a) creates alternative means of committing the crime of DUI and (2) that the State presented sufficient evidence to establish that Ahrens both operated and attempted to operate a vehicle while under the influence of alcohol. *State v. Ahrens*, No. 103,662, 2011 WL 767858 (Kan. App. 2011) (unpublished opinion), *rev. granted* 292 Kan. 966 (2011).

We granted Ahrens' petition for review, obtaining jurisdiction under K.S.A. 20-3018(b).

## ANALYSIS

Ahrens argues he was deprived of his right to a unanimous jury verdict because the State charged him with, and the jury was instructed on, alternative means of committing DUI, *i.e.*, operating *or* attempting to operate a vehicle while under the influence of

alcohol, but the State failed to present evidence sufficient to show that he attempted to operate a vehicle while under the influence of alcohol.

Ahrens' argument rests on a trio of decisions from this court: *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), *Stevens*, 285 Kan. at 314, 316, and *State v. Wright*, 290 Kan. 194, 206, 224 P.3d 1159 (2010).

In *Timley*, this court established what we have since referred to as the "alternative means rule" and its corollary "super-sufficiency requirement":

" '[W]here a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.]' " *Timley*, 255 Kan. at 289.

In *Stevens*, we held that the DUI statute at issue here, 8-1567(a), provides alternative means of committing DUI because it prohibits both the operation and the attempt to operate a vehicle while under the influence of alcohol. *Stevens*, 285 Kan. at 314, 316.

Finally, in *Wright*, this court reinforced that a criminal defendant possesses a statutory right under K.S.A. 22-3421 to a unanimous jury verdict and that the enforcement of the *Timley* rule and its corollary super-sufficiency requirement "is the only choice" to ensure that statutory right. *Wright*, 290 Kan. at 201, 206.

Relying on these cases, Ahrens points out that he was charged with, and the jury was instructed on, alternative means of committing DUI, but the State failed to present any evidence he attempted to operate a vehicle while under the influence of alcohol. Thus, he argues, he was deprived of a unanimous jury verdict and his conviction must be reversed.

Like the panel, we reject Ahrens' alternative means argument but not for the same reasons identified by the panel. Instead, we reject Ahrens' argument in light of the framework for identifying alternative means we recently articulated in *Brown*, 295 Kan. 181, a decision rendered after the panel issued its opinion in this case. In *Brown*, we reiterated *Timley*'s alternative means rule and its corollary super-sufficiency requirement and declined the State's

invitation to reconsider *Wright's* conclusion that enforcement of that rule is necessary to protect a criminal defendant's statutory right to jury unanimity. *Brown*, 295 Kan. at 188-89. But we also refined our method of identifying alternative means within a statute. Specifically, we explained that our determination of whether a statute provides alternative means of committing a crime is governed by legislative intent, and we identified several guidelines to be used in ascertaining that intent. 295 Kan. at 189-200.

Our newly developed guidelines for determining whether a statute provides alternative means require us to reconsider our determination in *Stevens* that 8-1567(a)(3) contains two alternative means for committing a DUI: (1) operating a vehicle while under the influence of alcohol, and (2) attempting to operate a vehicle while under the influence of alcohol. 285 Kan. at 314, 316. *Stevens'* determination emanated from a series of cases beginning with *State v. Fish*, 228 Kan. 204, 612 P.2d 180 (1980).

In *Fish*, the State sought clarification of whether it was "a violation of K.S.A. 1979 Supp. 8-1567(a) for an intoxicated person to be in a motor vehicle with the motor running where there is no evidence, direct or circumstantial, that he drove the motor vehicle in that condition?" *Fish*, 228 Kan. at 204. Specifically, the State asked the court to find a distinction between the phrases " 'to operate' " and " 'to drive' " as used in K.S.A. 1979 Supp. 8-1567(a) and (b), with the term " 'operate' " being broad enough to include "acts of a person in a motor vehicle not involving the actual driving of the vehicle." 228 Kan. at 205. The State argued if "operate" was broadly interpreted then "an intoxicated person, who starts the motor of an automobile and, thereafter, remains seated in the vehicle" could violate K.S.A. 1979 Supp. 8-1567(a). 228 Kan. at 205.

The *Fish* court rejected the State's argument. After reviewing several statutes, the court determined that the legislature intended for the terms " 'operate' " and " 'drive' " to mean the same thing because the legislature used the terms interchangeably. 228 Kan. at 209-10. The court further concluded

"that the word *'operate'* as used in section (a) of [K.S.A. 1979 Supp. 8-1567] should be construed to mean *'drive,'* thus requiring some evidence, either direct or circumstantial, that the defendant drove the automobile while intoxicated in order

for the defendant to be convicted under that section. Proof of driving does not require an eyewitness to the driving. It may be shown by circumstantial evidence as was done in *State v. Dill*, 182 Kan. 174, and *State v. Hazen*, 176 Kan. 594." *Fish*, 228 Kan. at 210.

We find it curious that *Fish* interpreted the terms "drive" and "operate" as being synonymous. Significantly, *Fish* recognized that other jurisdictions had construed the term "driving" in DUI statutes as requiring actual movement of the vehicle but had construed the term "operating" more broadly "to include not only the act of driving but also such acts as starting the engine or activating the electrical or mechanical devices of the vehicle." *Fish*, 228 Kan. at 206 (citing Annot., 93 A.L.R.3d 7). *Fish* also noted that before 1971, Kansas DUI statutes used the term "drive" and, in 1974, the former DUI statute, K.S.A. 8-530, was replaced with K.S.A. 8-1567 (Weeks) "which made it unlawful to *operate* any vehicle while under the influence of intoxicating liquor." *Fish*, 228 Kan. at 206.

Nevertheless, *Fish* reaffirmed that a DUI conviction could be sustained with circumstantial evidence of driving but concluded the legislature's decision to replace the word "drive" in the DUI statute with the term "operate" was essentially meaningless because the legislature used the terms interchangeably in several other statutes.

Five years after the *Fish* decision, the legislature amended K.S.A. 8-1567 to prohibit "the operation *or the attempt to operate* any vehicle by a person under the influence of alcohol." *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002) (citing L. 1985, ch. 48, sec. 9); K.S.A. 1985 Supp. 8-1567(a). The legislature's decision to add the phrase "attempt to operate" appears to have been a direct response to *Fish*.

Significantly, the *Fish* court relied on the legislature's interchangeable use of the terms "drive" and "operate" in several statutes to reject the State's argument that the legislature's change of the term "drive" to "operate" in the DUI statute signaled a legislative intent to broaden the acts that would constitute a DUI. *Fish*, 228 Kan. at 207-10. And, in the same bill amending the DUI statute to add the "attempt to operate" language, the legislature amended the language of several of the other statutes cited in *Fish*. See L.

1985, ch. 48, secs. 2, 3, 7 (amending K.S.A. 8-285, K.S.A. 8-1001, and K.S.A. 8-1005 to replace the term "driving" with the phrase "operating or attempting to operate"). Thus, it seems the legislature's response to *Fish* was an attempt to express its intent that the term "operate" should be broadly construed.

This court's first opportunity to consider the 1985 amendment arose in *Kendall*. There, this court explained that after the amendment K.S.A. 8-1567(a) "encompasses both those accused of actually driving while under the influence and those who merely tried but failed, with no election required." 274 Kan. at 1009. After recognizing that the new DUI statute was intended to encompass a broader spectrum of conduct, the *Kendall* court decided that the new language created alternative theories of prosecution. 274 Kan. at 1011-12. Specifically, the *Kendall* court noted that the jury was instructed under the theory that Kendall "drove" a vehicle and, in a separate instruction, "on the alternative theory of attempted DUI" where the State alleged Kendall "attempted to drive" a vehicle. 274 Kan. at 1007.

The jury verdict form in *Kendall* gave the jury three options: (1) the defendant was guilty of DUI "by driving a motor vehicle," (2) the defendant was guilty of DUI "by attempting to drive a motor vehicle," or (3) the defendant was not guilty. 274 Kan. at 1010. During deliberations, the jury asked for a legal definition of driving. After consultation with counsel, the trial court responded that " '[t]he words "to drive" and "operate" are synonymous under Kansas law. Movement of the vehicle is not required.' " 274 Kan. at 1008.

On appeal, the defendant challenged the court's response to the jury regarding movement of the vehicle. The *Kendall* court agreed that the trial court misstated the law. 274 Kan. at 1008. The court then cited *Fish* for two propositions: "(1) to operate a vehicle as set forth in 8-1567(a) means to drive it; and (2) in order to be convicted of operating a vehicle under the influence, there must be some evidence, *direct or circumstantial*, that the defendant drove the vehicle." (Emphasis added.) *Kendall*, 274 Kan. at 1008-09. Nonetheless, the *Kendall* court affirmed the defendant's DUI conviction, reasoning:

"Kendall was found in the driver's seat of his truck with the engine running, the headlights on, his foot on the brake, and his seat belt fastened. The truck was sitting in the middle of a public street in a residential neighborhood. Even if the jury believed Kendall did not move his vehicle while under the influence of alcohol, there was sufficient evidence to convict Kendall of DUI on the alternative theory that he attempted, but failed, to operate the truck.

"The trial court's answer to the jury's question, while error, was harmless." 274 Kan. at 1012.

Essentially, *Kendall* unknowingly paved the way for operating and attempting to operate to be construed as alternative means of committing a DUI. And that construction took hold in the Court of Appeals decision in *State v. Stevens*, 36 Kan. App. 2d 323, 138 P.3d 1262 (2006).

There, a majority of the Court of Appeals' panel relied on *Kendall* to conclude that "operating" and "attempting to operate" were alternative means of committing the crime of DUI. *Stevens*, 36 Kan. App. 2d at 336-37. The majority further concluded there was sufficient evidence to support both means. In finding sufficient evidence to support an attempt to operate, the panel specifically cited *Kendall's* statement that " '[m]ovement of the vehicle is not required in order to convict a defendant of DUI under the theory that defendant *attempted* to operate the vehicle.' " *Stevens*, 36 Kan. App. 2d at 337-38 (quoting *Kendall*, 274 Kan. at 1009-10).

Finally, this court solidified the notion that DUI is an alternative means crime in *Stevens*, 285 Kan. 307. On petition for review, this court agreed with the Court of Appeals' assessment that the defendant's jury unanimity argument involved alternative means rather than multiple acts. Specifically, this court held that the case involved "violation of K.S.A. 2006 Supp. 8-1567(a)(3) by more than one means (operating or attempting to operate)." 285 Kan. at 314. And, like the Court of Appeals majority, this court found sufficient evidence to support both means. 285 Kan. at 319.

While *Stevens* did not cite *Kendall*, we recognize that *Stevens'* determination that operating a vehicle while under the influence of alcohol and attempting to operate a vehicle while under the influence of alcohol are alternative means of committing a DUI was derived from *Kendall* which, in turn, was derived from *Fish*.

But we find it significant that neither *Fish* nor *Kendall* were "alternative means" cases.

And, in light of *Brown*'s emphasis on legislative intent as the governing principle in identifying alternative means statutes, we conclude that the *Kendall* court did not adequately consider whether the legislature intended to make DUI an alternative means crime when it added the phrase "attempt to operate" to the DUI statute in 1985. Accordingly, *Kendall* does not provide a solid foundation for *Stevens*' determination that DUI is an alternative means crime and we analyze this issue anew in light of *Brown*.

Because legislative intent governs, our first task is to consider the language and structure of the DUI statute to determine whether the legislature intended to create alternative means of committing DUI by inserting a disjunctive "or" between the term "operate" and the phrase "attempt to operate." See *Brown*, 295 Kan. at 193-94. "Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." 295 Kan. at 193-94.

*Brown* suggested a framework for determining whether the legislature intended a statute to include alternative means of committing a crime:

"In examining legislative intent, a court must determine for each statute what the legislature's use of a disjunctive 'or' is intended to accomplish. Is it to list alternative distinct, material elements of a crime—that is, the necessary *mens rea*, *actus reus*, and, in some statutes, a causation element? Or is it to merely describe a material element or a factual circumstance that would prove the crime? The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. But merely describing a material element or a factual circumstance that would prove the crime does not create alternative means, even if the description is included in a jury instruction. [Citation omitted.]" 295 Kan. at 194.

Ahrens was charged under K.S.A. 2008 Supp. 8-1567(a)(3). At the time Ahrens committed the crime, K.S.A. 2008 Supp. 8-1567(a) provided:

"(a) No person shall *operate or attempt to operate* any vehicle within this state while:

(1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto, is .08 or more;

(2) the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is .08 or more;

(3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle;

(4) under the influence of any drug or combination of drugs to a degree that renders the person incapable of safely driving a vehicle; or

(5) under the influence of a combination of alcohol and any drug or drugs to a degree that renders the person incapable of safely driving a vehicle." (Emphasis added.)

Applying *Brown*, we conclude that the legislature did not intend to create alternative means of committing DUI by placing the disjunctive "or" between the term "operate" and the phrase "attempt to operate" in K.S.A. 2008 Supp. 8-1567(a).

The crime of driving under the influence requires two primary elements—that is, driving and simultaneously being under the influence. The driving element can be established through proof that the defendant either "operated" or "attempted to operate" the vehicle, while the "under the influence" requirement can be established through proof of any of the factual circumstances described in subsections (a)(1) through (a)(5).

Essentially, rather than requiring the State to prove that a defendant actually drove a vehicle while under the influence, the legislature employed the phrase "operate or attempt to operate" in order to encompass a broader set of factual circumstances that could establish the driving element. In the language of *Brown*, the term "operate" and the phrase "attempt to operate" merely "describe the factual circumstances in which a material element"— *i.e.*, driving—"may be proven." *Brown*, 295 Kan. at 196-97.

Notably, the latest version of the DUI statute reinforces the legislature's intent in this regard. As discussed, the preliminary language contained in the previous version of the DUI statute provided: "No person shall operate or attempt to operate any vehicle within this state while: . . . ." K.S.A. 2008 Supp. 8-1567(a). In 2011, the legislature amended the preliminary language to read: "Driving

under the influence *is* operating or attempting to operate any vehicle within this state while: . . . ." (Emphasis added.) K.S.A. 2011 Supp. 8-1567(a). Thus, the most recent version of K.S.A. 8-1567(a) provides added support for our conclusion that the elements of the crime are (1) driving and (2) being under the influence, while the language following that phrase simply sets out the factual bases that will satisfy the elements of the crime.

Because we conclude the legislature did not intend the phrase "operate or attempt to operate" in K.S.A. 2008 Supp. 8-1567(a) to create alternative means of committing the crime of DUI, we reverse the Court of Appeals decision finding otherwise. Further, our conclusion means that the district court's inclusion of that phrase in the charging instructions in this case did not create a jury unanimity problem and does not demand application of the super-sufficiency requirement. See *Brown*, 295 Kan. at 196-97.

Here, the State alleged Ahrens unlawfully and "intentionally operat[ed] or attempt[ed] to operate a motor vehicle while under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle," in violation of K.S.A. 2008 Supp. 8-1567(a)(3). Ahrens does not challenge the sufficiency of the evidence that he "operated" the vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving the vehicle, and the record demonstrates more than sufficient evidence of such operation. Thus, we affirm his DUI conviction.

In conclusion, while we reverse the Court of Appeals' conclusion regarding alternative means, we affirm its judgment affirming Ahrens' conviction and the judgment of the district court.