NOT DESIGNATED FOR PUBLICATION

No. 119,004

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RONNI KLEIN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed August 2, 2019. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., ATCHESON, J., and BURGESS, S.J.


PER CURIAM: In a bench trial, the Johnson County District Court found Defendant Ronni Klein guilty of driving under the influence, a felony violation of K.S.A. 2016 Supp. 8-1567 because of her past convictions. On appeal, Klein contends the State presented insufficient evidence to support the guilty finding. Given our standard of review calling for an evaluation of the evidence deferential to the fact-finder's conclusion, we affirm. The evidence, though largely circumstantial, was sufficient to establish Klein's guilt.

1

FACTUAL AND PROCEDURAL HISTORY

Both at trial and on appeal, the critical issue was whether Klein attempted to or did operate a motor vehicle. Nobody has seriously disputed that Klein was intoxicated when Shawnee Police Officer Kassie Taulbert confronted and arrested her or that a breath test showed her to be well over the legal limit. We recount the evidence in that light.

About 8:15 p.m. on Halloween 2016, Taulbert was dispatched to investigate a report of a drunk driver leaving Pegah's restaurant in Shawnee. The dispatcher identified the vehicle involved as a black Infiniti.

As Taulbert passed a convenience store and gas station on the way to the restaurant, she saw a black Infiniti with the engine running parked in front of the store. Taulbert parked in the lot and walked toward the Infiniti. Klein then came out of the building and got into the driver's seat of the Infiniti. At trial, Taulbert testified that she saw Klein reach toward a center console and place her hand on the gearshift. At almost the same time, Taulbert knocked on the driver's side window. Taulbert testified that Klein stopped and never shifted the Infiniti out of park. While being cross-examined during the trial, Taulbert acknowledged that at the preliminary hearing she described Klein as reaching for a gearshift on the steering column.

In response to Taulbert's knock, Klein either rolled down the window or opened the door and said, "I'm sorry, I'm driving for him because he can't." Klein indicated she was referring to Luke Gates, who had been sitting in the front passenger seat.

Taulbert noted that Klein had a strong odor of alcohol on her breath and displayed physical indicators of intoxication. In response to a question, Klein said she had drunk two beers, identifying the brand, about four hours earlier and quickly added that she also

2

had a shot of whiskey. According to Taulbert, Klein performed poorly on several tests to measure her mental acuity and physical coordination.

Taulbert arrested Klein at the convenience store and transported her to the local police station. Klein agreed to take an evidentiary breath test on an Intoxilyzer 9000. The test was administered at 9:35 pm. and showed Klein had a blood-alcohol concentration of .20.

Taulbert later questioned Klein after advising her of her *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Klein told Taulbert she did all of her drinking at home between 11 a.m. and 6:45 p.m. and then drove to the restaurant. Klein also said she planned to drive home from the convenience store. During the trial, Taulbert initially testified that Klein said she drove from the restaurant to the convenience store but later hedged on the clarity of the admission. On direct examination, Taulbert testified this way:

> "Q. Did you ask Ms. Klein if she had driven that vehicle?
> "A. I did.
> "Q. And what did she have to say?
> "A. She stated that she did drive the vehicle.
> "Q. Did she mention when or kind of where she was driving the vehicle?
> "A. That they went to Pegah's at 5354 Roberts.
> "Q. Did she say how they got from Pegah's to that gas station?
> "A. That she was driving the vehicle."

But on cross-examination, Taulbert testified:

> "Q. Okay. Let's talk about the questioning at the station. . . . [Y]ou asked her if she had been operating the vehicle; right?
> "A. Yes.
> "Q. But you didn't ask her what time?

3

"A. Not to my recollection.

"Q. Okay. And you said that she had admitted that she was driving from Pegah's to the gas station?

"A. She stated she was driving home.

"Q. Okay. So you didn't ask the specific question of did you leave Pegah's and drive to the gas station?

"A. No."

The State charged Klein with operating or attempting to operate a motor vehicle in violation of K.S.A. 2016 Supp. 8-1567 based on her blood-alcohol level as tested within three hours afterward or, alternatively, based on evidence showing she was incapable of safely doing so. Under K.S.A. 2016 Supp. 8-1567, an attempt to drive is treated the same as actually driving under the influence. They carry identical punishments and both count as past convictions in fixing the statutory punishment for a repeat offender.

Klein gave up her right to a jury trial, and the district court heard the case on September 19, 2017. The State's case principally rested on Taulbert's testimony. Klein did not testify in her own defense. At the conclusion of the evidence, the district court found Klein guilty of attempting to operate and, alternatively, actually operating the Infiniti in violation of K.S.A. 2016 Supp. 8-1567.

At a later hearing, the district court denied Klein's motion for new trial and sentenced Klein to a 12-month jail term but released her on probation because she had been in custody for 134 days awaiting trial. The district court fined Klein $1,750, the minimum amount required for a third conviction. Klein has appealed.

LEGAL ANALYSIS

On appeal, Klein challenges the sufficiency of the evidence supporting her conviction. The standard of appellate review is well established. An appellate court

4

examines the evidence presented at trial in a light most favorable to the prevailing party, here the State, and then determines whether that evidence is sufficient to permit a rational fact-finder to conclude that the defendant committed the charged offense beyond a reasonable doubt. In assessing the evidence, an appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. Circumstantial evidence may provide the basis for a conviction so long as the inferences drawn from the circumstances are reasonable. *State v. Lowery*, 308 Kan. 1183, 1236, 427 P.3d 865 (2018).

Broadly speaking, the State must prove two elements under K.S.A. 8-1567 to convict a defendant of DUI:  (1) operating or attempting to operate a motor vehicle; and (2) being under the influence of alcohol, drugs, or both, consistent with any of several statutory criteria. See *State v. Ahrens*, 296 Kan. 151, 160-61, 290 P.3d 629 (2012). Operating refers to the essential function of a motor vehicle in moving the driver and any passengers or cargo from one place to another. The term is the equivalent of driving. 296 Kan. at 160 (characterizing that element of K.S.A. 8-1567 as "driving"). So sitting in a parked car with the engine running and the heater on or the stereo blasting is not itself operating the vehicle for purposes of K.S.A. 8-1567. An attempt to operate requires the defendant to do something immediately proximate and preparatory to driving. Shifting a vehicle from park to drive with the engine running would be an example. Unlocking the car door to sit in the driver's seat would not.

The intoxication element may be proved by showing the driver was incapable of safely driving a motor vehicle because of his or her consumption of alcohol, drugs, or some combination of those inebriants. That's, perhaps, the most elemental form of DUI. But the Legislature has adopted two proxies for intoxication that are legally sufficient to support a conviction if the driver is otherwise operating or attempting to operate a vehicle:  (1) having a blood or breath alcohol concentration of .08 or greater at the time of operation; or (2) having a blood or breath alcohol concentration of .08 or greater within

5

three hours after operation. K.S.A. 2016 Supp. 8-1567(a)(1)-(2). Those standards do not require the State to prove the inability to operate the vehicle safely—simply exceeding the proscribed alcohol level is enough. See *Ahrens*, 296 Kan. at 160.

In this appeal, both sides look primarily at whether the evidence sufficiently supported the district court's decision that Klein attempted to operate the Infinti while under the influence based on the circumstances Taulbert observed in the parking lot and the related evidence. So we start there.

At trial, Taulbert testified the engine of the Infiniti was running when Klein came out of the convenience store and got in the driver's seat. She also said she saw Klein reach for and touch the gearshift on the console. Taulbert explained that neither the gearshift nor anything else on the console controlled any ancillary functions of the vehicle, such as the lights or the wipers. Although Klein's lawyer pointed out and Taulbert agreed that she had testified at the preliminary hearing that the gearshift appeared to be on the steering column, the district court essentially credited the officer's trial testimony.

That credited evidence alone arguably would support a finding that Klein attempted to operate (or drive) the Infiniti. The vehicle was in park, and the only reason Klein would have grabbed the gearshift would have been to shift from park into drive or reverse, preparatory to leaving the parking lot. Klein stopped when Taulbert knocked on the window. So nobody knows as a matter of historical fact what Klein was going to do because she never did it. But if she had intended to remain in the parking lot, she would not have had to fiddle with the gearshift to turn off the engine or for some other reason consistent with staying put. Klein, of course, offered no benign explanation of her actions either to Taulbert at the time or to the court during the trial.

6

We do not, however, rest our conclusion on just that evidence. If that were the State's case on attempted operation, it would be the proverbial close one. The line between sufficiently proximate conduct to support a conviction for an attempt and conduct too remote isn't easily drawn. But we don't have to do that here.

Klein's statements to Taulbert substantially strengthen the inferences that reasonably may be taken from all of the circumstances. Immediately after Taulbert knocked on the window, Klein explained that she was driving because Gates, the passenger, wasn't able to. The statement was one of present intent, and Klein plainly didn't convey that neither she nor Gates was fit to drive, so they were going to wait at the convenience store until they sobered up. Later that evening after she had been arrested, Klein explained to Taulbert that she was driving home. Again, Klein's comment illuminates what she intended to do before Taulbert interrupted her.

The trial evidence collectively was enough to support the charge of attempting to operate a motor vehicle under the influence, especially given the district court's announced credibility determinations. The results of Klein's breath test furnished more than adequate evidence of intoxication—so much so, Klein doesn't dispute that aspect of the State's proof.

Even if we were mistaken in assessing the sufficiency of the evidence as supporting Klein's conviction for attempting to operate the Infiniti, the district court also found Klein guilty for actually operating the vehicle. That finding, if properly supported, is legally adequate to uphold the conviction. We now turn to that aspect of the case and the evidence.

On this point, Klein's statements to Taulbert, including her chronology of her activities, establish her proscribed operation of the Infiniti. Klein told Taulbert she did all of her drinking that day—the beers and the whiskey—before she drove with Gates to the

7

restaurant. So the district court knew she did not have any more liquor at the restaurant. According to Taulbert, Klein said she and Gates left for the restaurant sometime after 6:45 p.m. At trial, Taulbert testified that the breath test was administered to Klein at 9:35 p.m. and showed her to be well over the .08 limit proscribed in K.S.A. 2016 Supp. 8-1567(a). Based on her own undisputed admissions, Klein drove to the restaurant less than three hours before she took a breath test that established she had an alcohol concentration over .08. The evidence, therefore, supports the elements of a DUI violation for operating a motor vehicle under K.S.A. 2016 Supp. 8-1567(a)(2). The district court properly found Klein guilty on the alternative charge of driving under the influence. In reaching that conclusion, we need not and do not parse Taulbert's less than crystalline testimony as to whether Klein admitted driving from the restaurant to the convenience store. Whether Klein did so or not is legally superfluous.

Affirmed.